UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 6:10-CR-61-REW-HAI |
| v. | ) | RECOMMENDED DISPOSITION & ORDER |
| BILLY HALL, | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Billy Hall pleaded guilty to aiding and abetting possession with intent to distribute methadone. D.E. 72 (plea agreement). In August 2012, then-District Judge Thapar sentenced Hall to 160 months' imprisonment, to be followed by ten years of supervised release. D.E. 94 (judgment). The sentencing transcript has been filed in the record. D.E. 132, 133. Hall entered supervised release on December 1, 2022.

On January 9, 2023, Defendant Billy Hall's Probation Officer requested that two of Defendant's conditions of supervised release be removed from the judgment. The request states:

> The purpose of this correspondence is to request Your Honor remove the following Special Conditions:
>
> 11) The defendant shall not be allowed to drive while on supervised release.
>
> 12) The defendant shall be placed on home detention for one (1) year following his release from imprisonment. The probation office shall determine the method of monitoring during this period.
>
> Mr. Hall is 69-years-old and presents with several ongoing medical issues that require him to keep numerous scheduled physicians appointments. Allowing him to drive will assist him with keeping his medical appointments, as well as independently providing for his daily living needs, such as grocery shopping.

Likewise, removal of the special condition of home detention would assist in his independently providing for his own care.

District Judge Wier ordered the government to respond to the modification request. D.E. 124. The government opposed the modification but stated it would not oppose Hall being allowed to drive only to medical appointments. D.E. 125. The government's filing points out some of the background upon which Judge Thapar relied when crafting the special terms of supervision. Concerning the no-driving condition, the government argues:

> Hall has a demonstrated history of dangerous behavior behind the wheel that is reflected in his criminal history. Hall's Presentence Investigation Report lists a bevy of vehicular offenses, including: (1) a 2000 conviction for Operating On a Suspended/Revoked License; (2) two separate convictions for Operating a Motor Vehicle Under the Influence in 2004 and 2005; (3) a conviction of First Degree Wanton Endangerment resulting from a 2005 police chase; and (4) a 2006 conviction for Operating on a Suspended License and Careless Driving as a result of Hall stopping in the middle of the road and driving in reverse for two to three tenths of a mile, fleeing from police, and being found with a white substance on his nose. [*see* Presentence Investigation Report at pp. 6 – 11].
>
> Simply put, Hall has not demonstrated that he can be trusted to drive beyond attending medical appointments. His record shows a repeated disregard for the safety of others by operating a vehicle in an unsafe or illegal manner.

*Id*. at 2. Concerning the home-detention condition, the government argues:

> Hall was ordered to be placed on home detention for only one (1) year of his ten (10) year supervised release term. [R. 94 at p. 4]. This condition is designed to reintegrate Hall into society in the safest way possible. The United States Probation Office has the discretion to allow Hall to travel to his appointments as necessary, which is sufficient to allow Hall to sustain his needs but still maintain the public protection that home detention affords.

*Id*. at 2-3.

Following the government's filing, Judge Wier appointed counsel for Hall and ordered a response. D.E. 126. Kelly Ridings filed that response in favor of the modifications on February 1. D.E. 127. Concerning the no-driving condition, Hall argues his driving no longer poses a

2

danger to the community because he is older and his prior infractions are far in the rear-view mirror:

> Mr. Hall is currently sixty-nine. He was fifty-seven at the time of the underlying federal offense. His last driving related criminal charge occurred in 2006, when he was fifty-three years of age. Leading up to the federal indictment, Mr. Hall went from 2006-2010 without any criminal offenses relating to operating a motor vehicle. It has been nearly seventeen years since Mr. Hall's last driving-related incident.

D.E. 127 at 2. Hall argues his traffic violations stemmed from his drug use, but he has now been clean since 2010. He had no problems in federal prison or the halfway house, where he was subjected to weekly drug screening. *Id*. Hall was even permitted to live off-site during his time with the halfway house and drove himself to and from the halfway house with BOP permission.[1] *Id*.

Hall further argues he has a pressing need to drive:

> Mr. Hall has rheumatoid arthritis, a heart condition and a pacemaker, high blood pressure, high cholesterol, and diabetes. He has specialists that he must see every few weeks, including cardiologists in Hazard and Whitesburg and a rheumatologist in Pikeville. Mr. Hall is currently unable to drive himself to his appointments, unable to pick up his prescriptions, unable to drive himself to the grocery store, and unable to independently provide for his needs. The only available driver he has is his sister, who is sixty-five years old and also suffers from some health problems. If Mr. Hall cannot procure a driver, he must reschedule his appointments or go without food or his medication.

D.E. 127 at 3.

Concerning home detention, Hall argues, "The two and half years with Dimas Charities have shown that Mr. Hall has successfully been reintegrated into society and further home detention is not necessary at this point to promote public safety." D.E. 127 at 3.

On February 8, Judge Wier referred the modification request to the undersigned

---

[1] At the February 24, 2023 hearing, the Probation Officer confirmed that the BOP had allowed Hall to drive himself to and from the halfway house. Defense counsel stated Hall drove there four times a month, without incident.

>for proceedings and a recommended disposition or ruling, as applicable. The Magistrate Judge should hold a prompt hearing, should account for the propriety of any changes in light of Judge Thapar's motivating concerns and the brief period of supervision, and should recommend a resolution upon full consideration.

D.E. 129.

The Court conducted a hearing on February 24, 2023. D.E. 139. Hall was present, having been driven to court (a 2.5-hour trip) by his sister. The defense argued that changed circumstances weigh in favor of removing the two contested condition. Since sentencing, Hall argued, his family has become less available to help him. Generally, Hall's sister drives him, but she does not have her own automobile, so she uses Hall's. Hall himself has changed, he argued: Because he is no longer using drugs, he is no longer a dangerous driver and no longer needs to be controlled through home detention.

Concerning the difficulties of the no-driving condition, Hall told the Court there have been three times that he had to reschedule medical appointments because he was unable to get a ride. He said he had not suffered any adverse health effects from missing those appointments. But one time, he said it was an urgent arthritis issue, when his sister was unable to help him. Hall visits his primary care doctor every two weeks to receive injections. The Probation Officer specified that going forward, her supervision of Hall will be done by visits to his home.

The Probation Officer also provided the Court with a written drug-treatment assessment from Kentucky River Community Care. The Officer explained that a mental-health assessment had also been completed, and she was awaiting a written report. The Court took the matter under advisement and instructed the Probation Officer to provide the mental-health assessment once it was received. On February 28, Chambers received the mental health report.

Sections 3563(c) and 3583(e)(2) provide for modifications of conditions of current supervisees, provided the modification is done pursuant to the Federal Rules of Criminal Procedure and the statutes that governed the setting of the original conditions. Under 18 U.S.C. §§ 3563(b) and 3583(d), the court may order special conditions of supervised release, which may be imposed to the extent that they (a) are reasonably related to the relevant sentencing factors listed at 18 U.S.C. § 3553(a); (b) involve only such deprivations of liberty or property as are reasonably necessary for the relevant sentencing purposes listed at 18 U.S.C. § 3553(a); and (c) are consistent with any pertinent policy statements issued by the Sentencing Commission. And, as stated in 18 U.S.C. §§ 3583(d)(2) and 3553(a)(2)(B)-(D), conditions of supervision must involve "no greater deprivation of liberty than is reasonably necessary" for the purposes of deterrence; protection of the public; and providing needed correctional treatment to the defendant. At bottom, in considering modification, the Court must here apply the same factors that Judge Thapar applied at sentencing.

As the sentencing transcript revealed, Judge Thapar took pains to craft a sentence (combining incarceration with supervision) that addressed particularly Hall's criminal history, age, and poor health.

> Let's say I put him on ten years of supervised release and say he's not allowed to drive, period, not allowed to operate a motor vehicle. If he does violate, we can put him back in jail. And then during the time he's in incarceration, we get him drug treatment and we start to take the steps at least to give him a chance when he gets out to live a life without drugs . . . . I'm not saying he won't commit crime because he's committed a crime at an age most people would say people don't commit crime. I think the statistics bear that out. But . . . the majority of his criminal behavior all centers around the use of drugs. . . . That's what's wrecked his life. It's a train wreck from the time he was in school until today.

D.E. 132 at 28-29.

The government requested a 200-month sentence. D.E. 132 at 29.

"This isn't an easy case," Judge Thapar concluded. D.E. 132 at 33. Hall clearly had health problems, but those health problems (and his age) had not prevented him from committing crimes: "I just don't see him to be seriously infirmed if he's able to continuously commit criminal activity." *Id*. Judge Thapar reasoned, "What if I did this to balance it out? What if I gave him a sentence and . . . then do some home incarceration on the backside?" *Id*. at 30. Judge Thapar decided to impose a sentence below what the government sought to give Hall "one final chance in his life to get out." *Id* at 34. The 160-month sentence followed by home incarceration was intended to "set up a road map that he can get out and at least see his family one final time." *Id*. at 35. The ten-year no-driving condition was intended to "help foster protecting the public" when Hall could easily have been incarcerated longer instead. *Id*. Judge Thapar recommended RDAP

> to give you an opportunity to be drug-free when you get out. I am also going to require that during your supervision, the ten years, you not be allowed to drive. So you will have to get your family to drive you when you need to go. I find that on the back end that takes account of it. As a condition of supervised release, the first two years -- or actually, I'll just actually do the first year, will be home incarceration.

*Id*. at 37.

The undersigned recommends denial of the requested modifications. The sentencing transcript shows that Judge Thapar looked to the potential future, to Hall's eventual release after completing drug treatment, and chose supervision terms that took into account Hall's age, his medical problems, his reliance on his family for transportation, and his unusual criminal history. Hall was given a break in his incarceration term in exchange for an opportunity to be on home detention and then no-driving supervision, to give him a chance to live a drug-free life around his

6

family.[2]  The status quo as described by the parties is not materially different from what Judge Thapar envisioned ten years ago.  Judge Thapar hoped and expected that Hall would be where he is now—drug free, yet living under strict conditions because of his extensive history of danger to the public.  Judge Thapar knew Hall would have medical appointments and foresaw that his family would need to drive him about.  The entire sentence (incarceration and supervision) was crafted as a whole package, taking into account the unique facts of this case.  Tinkering with that package would undermine the factors that drove it.  No party has pointed out a flaw in Judge Thapar's reasoning.  On the current facts, there is no hook strong enough on which to hang a justification for modifying the original conditions.  The recent Kentucky Community Care Reports also contain no indication of unexpected changes that would call into question the wisdom of the original sentence.  Today, Hall is where he was expected to be.

Accordingly, the undersigned **RECOMMENDS** that the Probation Office's request for modification be denied in full.  This includes the government's counter-proposal that Defendant be allowed to drive, but only to medical appointments.  The original conditions were imposed in accordance with the applicable standards under the expectation and hope that Hall would end up where he is today.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge.  Any objection must be filed within **fourteen days** of the entry of this order.  Failure to object per Rule 59(b) waives a party's right to review.  Upon

---

[2] Although Judge Thapar repeatedly discussed placing Hall on "home incarceration" (D.E. 132 at 28, 30, 37), when the sentence was pronounced, he imposed "home detention" (id. At 39), so Special Condition 12 of the Judgment imposed the lesser restriction of home detention.  D.E. 94 at 4.

7

expiration of that fourteen-day period, this matter will be submitted to Judge Wier for his consideration.

Further, to facilitate review, **IT IS HEREBY ORDERED THAT** the Clerk of Court **SHALL FILE UNDER SEAL** (1) the Probation Officer's January 6, 2023 modification request; (2) the January 27, 2023 Kentucky River Community Care drug-treatment assessment; (3) the February 14, 2023 Kentucky River Community Care mental-health-treatment assessment; and (4) Defendant's Presentence Investigation Report.

This the 1st day of March, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge